FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 1 9 2018

MATTHEW J. DYKMAN
CLERK

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of New Mexico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 18 MJ 8603 |
| Wayne Ryan, | ) | |
| Date of birth: XX/XX/1964 | ) | |
| SSN: XXX-XX-4025 | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ 01/20/2018 _____ in the county of _____ Socorro _____ in the
_____ District of _____ New Mexico _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Possession of a machinegun without proper licensing |
| 26 U.S.C. § 5861(d) | Possession of a silencer without proper licensing |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ryan Kacher / FBI Special Agent
*Printed name and title*

Electronically submitted and telephonically sworn before me.

Date: **2:20 AM, Mar 17, 2018**

_____
*Judge's signature*

City and state:   **Albuquerque NM**

Karen B. Molzen, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

United States of America
       v.                    )
Wayne D. Ryan           )     Case No.
Date of birth: XX/XX/1964  )
SSN: XXX-XX-4025        )
                             )
                             )

**AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT**

I, Ryan Kacher, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an arrest warrant for Wayne Ryan.

**I. Introduction**

1.      Your Affiant is a Special Agent of the Federal Bureau of Investigation (FBI) and has been so employed since October 2014.  Your Affiant is currently assigned to the FBI's Albuquerque Field Office and has experience investigating violent crimes, including firearms violations, as well as investigating threats to national security.

2.      Your Affiant has participated in the execution of dozens of search warrants pursuant to firearms, narcotics, and white collar crimes investigations.  Your Affiant graduated from the FBI training academy which provided training in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, firearms evidence seizure and processing, and various other criminal laws and procedures.

3.      The statements contained in this affidavit are based upon Your Affiant's investigation,

training, experience, and information provided by other sworn law enforcement officers whom

Your Affiant believes to be competent and reliable.  Because this affidavit is being submitted for

the limited purpose of securing an arrest warrant, Your Affiant has not included each and every

fact known concerning this investigation.  Your Affiant has set forth only the facts that Your

Affiant believes are necessary to establish probable cause to support an arrest warrant based

Wayne Ryan's (Ryan's) violations of 18 U.S.C. §922(o) and 26 U.S.C. §5861(d).


## II. RELEVANT STATUTES

4.      According to 18 U.S.C. §922(o), "It shall be unlawful for any person to transfer or

possess a machinegun."  26 U.S.C. §5845(b) defines a machinegun as "…any weapon which

shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one

shot, without manual reloading, by a single function of the trigger.  The term shall also include

the frame or receiver of any such weapon, any part designed and intended solely and exclusively,

or combination of parts designed and intended, for use in converting a weapon into a

machinegun, and any combination of parts from which a machinegun can be assembled if such

parts are in the possession or under the control of a person."  This affidavit will show that Ryan,

on multiple occasions, has fabricated a device which, when inserted into his personally owned

assault rifle, enables it to fire multiple rounds with a single function of the trigger.


5.      According to 26 U.S.C. §5861(d), "It shall be unlawful for any person to receive or

possess a firearm which is not registered to him in the National Firearms Registration and

Transfer Record."  According to 26 U.S.C. §5845(a)(7) a firearm includes "any silencer (as defined in section 921 of Title 18, United States Code)."  18 U.S.C. §921(a)(24) defines a silencer as "…any device for silencing, muffling, or diminishing the report of a portable firearm…"  This affidavit will show that Ryan has multiple silencers which he has built out of automobile oil filters which, when attached to his rifle, effectively muffle and diminish the report of his firearms.

## II. BEGINNING OF INVESTIGATION

6.      On 02/27/2017, Your Affiant conducted a liaison meeting with officers of New Mexico Game and Fish (NMGF) in Socorro, New Mexico.  The purpose of the meeting was for Your Affiant to inquire about the presence of any individuals who were known to be violent extremists or who harbored violent extremist ideology and were also in violation of federal law within NMGF's area of responsibility.  The three NMGF officers present immediately brought the name Wayne Ryan (Ryan) to Your Affiant's attention.  According to the NMGF Officers, Ryan had brandished a firearm in a threatening manner against one NMGF Officer in 2016.  The incident occurred while the Officer was on duty and conducting his normal responsibilities.  The NMGF Officers continued to explain that Ryan was suspected of trafficking drugs, owning illegal firearms, and was considered to be a threat to the community.  The NMGF Officers referred Your Affiant to an individual (hereinafter referred to as CHS1) as someone who would be knowledgeable about Ryan.

7.      On 03/02/2017, Your Affiant had a telephonic interview with CHS1.  CHS1 informed Your Affiant that he/she (herein after referenced with the masculine pronoun form for simplicity)

had been acquainted with Ryan for approximately five years before the time of the

interview. CHS1 and Ryan had numerous encounters during that time. CHS1 suspected Ryan to

be a user of methamphetamine (meth) based on his pale complexion, blood-shot eyes, and erratic

behavior. CHS1 suspected Ryan of being a drug dealer based on his ability to maintain valuable

assets, including 20 acres of land, weapons, and two personal aircrafts, despite not having steady

employment. CHS1's suspicions of Ryan's violations of federal narcotics laws are supported by

other observations by law enforcement personnel referenced later within this affidavit.


8.      In addition to the previously referenced activity, CHS1 provided the following

information about Ryan:

   - Ryan openly expressed a desire to kill then President of the United States Barack

   Obama.

   - Ryan possessed paramilitary equipment, including second generation night vision

   goggles, multiple AR 15s and many other firearms.

   - Ryan stated he was building a fully automatic Ruger 10/22 rifle which he intended to

   mount on his personal aircraft for the purpose of shooting coyotes.

   - Ryan claimed to have a machine gun.

   - Ryan was the subject of a Bureau of Land Management investigation into the illegal

   searching and taking of Indian and animal relics and artifacts from public lands.

   - Ryan owned and operated a two-passenger "experimental airplane" which he used to

   conduct illegal flight maneuvers including low-flying over peoples' houses.

   - Ryan told CHS1 he used his plane to fly over and harass the military by dropping "flour

   bombs" and conducting "low-fly" maneuvers over-head during training operations

conducted in the Cibola National Forest area.  (In an effort to substantiate this claim, interviews with military personnel were conducted, summaries of which are provided in this affidavit.)

9.      On 03/08/2017, Your Affiant contacted Bureau of Land Management (BLM) Ranger Mark Wheeler (Wheeler) to corroborate CHS1 reporting.  Wheeler confirmed BLM previously investigated Ryan for violation of federal law.  During the course of their investigation, BLM used hidden cameras to capture footage of Ryan conducting illegal digs on public land.  One of the images obtained by the hidden cameras on September 18, 2014, showed Ryan with what appears to be a law enforcement badge worn around his neck.  Wheeler expressed concern that RYAN could be impersonating law enforcement to intimidate others and deter them from interfering with his illegal activity.  Your Affiant examined one of the aforementioned images and also concluded it was similar to a law enforcement badge and could be used to imitate law enforcement.  Larry Cearly, Marshal for the Village of Magdalena, also reported to Your Affiant on 03/27/2017, that RYAN was in possession of a "Marshals badge."

10.     In corroboration with CHS1 reporting that RYAN was likely involved with meth, Wheeler also reported encountering a vehicle that was stuck on the side of the road near RYAN's residence.  Wheeler identified the driver of the vehicle as a woman who was "super high on meth."  Wheeler also found meth and meth pipes in the woman's possession.  When questioned, the woman told Wheeler that she was just coming from Ryan's house.  According to Wheeler, there is an RV on Ryan's property that is covered in black plastic, which the Socorro County Sheriff suspects is a mobile meth lab.

### III. FIREARMS VIOLATIONS

11.     Between 10/20/2017 and 10/30/2017, Your Affiant maintained text message communication with a New Mexico law enforcement officer who requested that his identity remain anonymous (herein after referred to as Officer1).  Officer1 had known Ryan for years. On or about 09/28/2017, Ryan explained and demonstrated to Officer1 how to convert an AR15 into a fully automatic rifle.  Ryan accomplished this by placing a "clip" behind the hammer inside the action of his personal AR15.  Ryan stated that he constructed the device on his own by using a "stripper clip."  He stated that the device enables an AR15 to work very well in full-auto and will shoot 100 rounds without failing.  Ryan explained and demonstrated this to Officer1 in the parking lot of Leseburg's Auto in Socorro, NM.

12.     On 11/06/2017, Officer1 informed Your Affiant, that Ryan was living at 1201 US Highway 60, Socorro, New Mexico.

13.     On 11/13/2017, Your Affiant arranged for a Confidential Human Source of the FBI (hereinafter referred to as CHS2 and referenced with the masculine pronoun form for simplicity) to meet and engage in conversation with Ryan.  After meeting with Ryan for several hours, CHS2 reported the following to Your Affiant:

        a.  Ryan told CHS2, "I got so much illegal shit I could go to prison for life."  He owns two airplanes and has a machinegun mounted to one of them.  He has an Assault Rifle that he converted to full-auto which he keeps on the passenger seat of his vehicle.  He keeps over 1,000 rounds of ammunition in his vehicle as well.

At his home residence he has several fully automatic weapons.  He has the ability to manufacture a component that converts a semi-automatic assault rifle into a fully automatic assault rifle.  It takes him about 30 seconds to complete the conversion.  He uses an oil filter as a suppressor on his weapons.  He possesses explosive material that is "much better than Tannerite." [Note: Tannerite is an explosive material known to Your Affiant to be comprised of ammonium nitrate and aluminum powder or similar materials and is highly dangerous and destructive when detonated.]

    b. Ryan further explained to CHS2 that he obtained a pilot's license in 2000 and "flies below the radar, just above the power lines, and sometimes below them." He flies that way so he can get places "quick, low, and undetected."  He wrapped the seat and gas tank of one of his airplanes with body armor.

14.    Your Affiant, as well as a team consisting of other FBI Agents, were in the nearby vicinity at the time CHS2 met with Ryan.  The Agents were able to confirm that Ryan appeared to reside at 1201 US Highway 60, Socorro, New Mexico.  The Agents were able to corroborate many of the details identifying Ryan, his personal vehicle, his place of work, and the time he met CHS2 via physical surveillance.

15.    On 01/20/2018, CHS2 again met with Ryan at his home residence at 1201 US Highway 60, Socorro, New Mexico, and in other areas in and around Socorro, New Mexico.  On the same day of the meeting, Your Affiant, along with other FBI Agents, conducted a consensual search of CHS2's person, clothing, and vehicle.  Your Affiant, ensured that CHS2 was not in possession of any weapons, suppressors, stripper clips, or any other illegal items prior to his meeting with Ryan.  CHS2 was equipped with a hidden video and audio recording device provided by the FBI.

Using this device, CHS2 was able to video record approximately 5 hours of time spent one-on-one with Ryan. Your Affiant retained secure possession of the recording in FBI evidence control. After viewing the video in its entirety, Your Affiant made the following observations:

    a.   Ryan discussed owning two airplanes and operating at least one of them. He talked about flying "with a 12 pack in the luggage area", drinking, and throwing empty bottles out the window. He doesn't worry because "you don't get pulled over in the air…there's no air police." Ryan showed CHS2 his Norinco 386 rifle which he claims to mount to his airplane.

    b.   Ryan uses "rubbers" to keep his fingerprints off of casings. He also has a device which makes it so that investigators can't conduct ballistic analysis on a round after it's been fired to determine the gun from which it was fired.

    c.   Ryan has a "muffler" made out of an oil filter he attaches to his firearms to make them quiet. He also has one that he made out of an actual muffler. The "muffler" reduces sound down to a tolerable level. The video clearly shows Ryan showing several of these mufflers to CHS2 and explaining how they work.

    d.   Ryan and CHS2 drove to open-space outside of Socorro, New Mexico. While sitting in the driver's seat of Ryan's vehicle, Ryan explains to CHS2 how to use a stripper clip to make a rifle fully automatic. He explains that the final product will resemble a "square root sign." Ryan jokes that the "square root to all of our problems is a fully automatic weapon." Ryan warns CHS2 that "this is where they will bust you…When you shoot it, if it goes fully automatic, they will take you in, it cannot wait." Ryan explains to CHS2 that there is a big gun range

somewhere else but he does not like to shoot there because if there's an officer there he will come and check you for your "credentials."

e.  After completing the fully-automatic seer, Ryan inserts the seer into his rifle and explains to CHS2 how it works. Ryan and CHS2 exit the vehicle and attach an oil filter suppressor to Ryan's rifle, now considered a machinegun with fully-automatic capability. Ryan and CHS2 proceed to fire the suppressed machinegun and discuss the impressive effectiveness of the suppressor.

f.  Ryan admonishes CHS2 that if they are approached then CHS2 is to remove the suppressor and throw it in the woods. He is to open the action of the rifle and remove the "square-root." If anyone questions them about the automatic rifle fire CHS2 was to say that they were "bump-firing it."

g.  After shooting the rifle with the suppressor, Ryan tells CHS2 that with the suppressor "you could do a drive-by shooting…you could shoot somebody in the house and none of the neighbors would know it."

16.     On 02/22/2018, the writer interviewed Jason Sais, known to Your Affiant as one of Ryan's associates. Sais explained to Your Affiant that Ryan was a "meth head." The most recent time he saw Ryan smoke meth was only three days earlier when he smoked a bowl of meth in Sais' living room on 02/19/2018. At that time he had approximately one quarter of an ounce in his possession which he kept in a small, round, plastic, purple container in his pocket. Ryan was a "big time user and used every day." In addition to meth, Ryan had guns on his person every day. He had a "pencil gun, belt buckle gun, and a Gattling gun." Sais had personally been to Ryan's property in Riley and seen his guns. He had around 100 guns and over 1,000 rounds of ammunition. He had M16s, machine guns, and pistols. In or around May

9

of 2017, Ryan showed Sais how to convert guns to be fully automatic.  He showed Sais a M16 that he had converted to be fully automatic.  He demonstrated how the conversion was accomplished by opening the gun up and filing something and then switching it to be fully automatic.  Ryan always had guns in his vehicle.  He said that he had permits for some of his guns but that "the law does not scare him."  In or around May of 2017, Ryan showed Sais where he kept his guns in a steel cage with chains locked around it at his property in Riley.  Ryan said all the guns were his and he has bought and collected them throughout the years.  Ryan possessed a badge that looked identical to a law enforcement badge.  He kept it in a black leather cover so he could pull it out and "flash it."  The badge was silver with blue inside.  Sais would have believed it was an actual law enforcement badge and "thought it was legit."

### IV. CONCLUSION

17.    Based on the foregoing information, Your Affiant believes there is probable cause that Ryan is in violation of the aforementioned firearms laws.  Your Affiant is concerned by the danger to public safety posed by a meth-addict who illegally wields fully automatic weapons, impersonates law enforcement, and illegally flies overhead, including around and above members of the United States Armed Forces.

I swear this information is true to the best of my knowledge and belief.

## REQUEST FOR SEALING

1.   It is respectfully requested that this Court issue an order sealing, until further order of the Court,

all papers submitted in support of this application, including the application and search warrant.

I believe that sealing this document is necessary because the items and information to be seized

are relevant to an ongoing investigation.  Premature disclosure of the contents of this affidavit

and related documents may have a significant and negative impact on the continuing

investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Ryan Kacher
Special Agent
Federal Bureau of Investigation

Electronically submitted and telephonically sworn before me.

UNITED STATES MAGISTRATE JUDGE